# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA EATON, | : | No. 3:09cv414 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| CITIBANK (SOUTH DAKOTA), N.A., | : | |
| Defendant | : | |

## **MEMORANDUM**

Before the court is defendant's motion for summary judgment. (Doc. 51). Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises from a credit card issued to the plaintiff by Defendant Citibank (South Dakota), N.A. ("Citibank").[1]  Plaintiff contends that she satisfied her obligation when she submitted as payment a check with the notation that by cashing her $110 check Citibank agreed to accept that amount as payment in full. Citibank contends that this payment did not satisfy the account and in a counterclaim demands payment of the full amount due.

The credit card here in question is covered by written terms and conditions.

---

[1] Neither party filed the separate statement of undisputed material facts required by Local Rule 56.1.  The defendant included such a statement in its brief in support of summary judgment, which does not comply with the rules.  The plaintiff included a response as an exhibition to her brief in opposition. (See Exh. F to Brief in Opposition (Doc. )).  That response, however, does not contain any citations to the record.  The court reminds the parties that they should apprise themselves of the local rules and follow them in any future litigation before this court.

(Defendant's Brief in Support of Summary Judgment (hereinafter (Defendant's Brief") (Doc. 51) at 2). Plaintiff disputes that this contract is enforceable. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (hereinafter "Plaintiff's Response") (Exh. F to Plaintiff's Brief in Opposition, (Doc. 55) at ¶ 2). The written agreement provides that the cardholder (here the plaintiff) "must pay at least the Total Minimum Due by the payment due date, and [plaintiff] may pay more at any time without a penalty." (Card Agreement, Exh. 1 to Defendant's Brief). The agreement further provides that "[w]e can accept late or partial payments, as well as payments that reflect 'paid in full' or other restrictive endorsements, without losing any of our rights under this Agreement." (Id.). The agreement also permits Citibank to "report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account my be reflected on your credit report." (Id.). The person issued the card is also responsible for any attorney's fees Citibank "incur[s], plus the costs and expenses of any legal action" if the bank is forced to turn to an outside agent to collect the account. (Id.) The agreement also establishes that federal and South Dakota law shall govern the contract. (Id.). Plaintiff contends that "the governing contract for the alleged account which is the subject of this civil action is in dipute." (Plaintiff's Response at ¶ 3) (emphasis in original). She does not explain how these written terms are "in dispute."

After being issued this card, plaintiff began receiving monthly billing statements. As part of papers submitted in support of the motion for summary

judgment, defendant has provided the court with billing records for the account from June 29, 2006 through May 24, 2007. (See Exh. 2 to Defendants' Brief). These records reflect that Citibank credited plaintiff's account with $110 for a payment received on November 1, 2006. (Id.). Earlier billing records apparently do not exist, but defendant has provided the court with "transaction reference reports" for the account from March 24, 2001 until May 27, 2006. (See Exh. 3 to Defendants' Brief). These records indicate that as of May 24, 2007, the last date on which plaintiff received a bill, her account balance stood at $6,842.53. (Id.).

Plaintiff admits that she used the account to make purchases for goods and services. (Plaintiff's Response at ¶ 8). She also admits that the last payment she made on the account came on November 1, 2006. (Plaintiff's Response to Defendant's Request for Admissions, Exh. C to Defendant's Brief at ¶ 5). Plaintiff contends, however, that this statement was not a payment, but a "full and final settlement of a disputed account." (Id.).[2] Thus, she insists, there was no balance on the account after that date, since "accord and satisfaction on the disputed account" had been achieved. (Id. at ¶ 6). Plaintiff made no payment on the account in 2007, 2008 and 2009. (Id. at ¶¶ 7-9). George Shadie, plaintiff's husband, testified at his deposition that neither he nor his wife had ever received a writing from Citibank that

---

[2]Plaintiff's brief contains a copy of the letter she sent defendant with this $110 payment. Dated October 28, 2006, the letter reads in part "[p]lease accept attached check . . . as settlement for Brenda Eaton['s] account." (Exh. to Brief in Opp.). "This is a settlement of a boni [sic] fide disputed transaction. This is not a reaffirmation or admission of debt. It is not a retolling of the statue of limitations." Id..

3

their $110 check had settled the account. (George Shadie Deposition (hereinafter "Shadie Dep."), Exh. D to Defendant's Brief, at 34). Shadie claimed, however, that he had spoken with a Citibank employee on the phone, who agree to accept $110 to settle the account. (Id.). Shadie also claimed to have sent several other payments to settle the account, though he had never received confirmation from Defendant that the payments had satisfied plaintiff's obligation. (Id. at 79). In an affidavit signed on June 4, 2010, George Shadie averred that he had sent defendant checks for various amounts in 2005 and 2006, believing that the parties had an agreement to settle the account. (Affidavit of George Shadie, Exh. 1 to Plaintiff's Brief in Opposition (Doc. 55) at 1-2). When Citibank did not close the account, he and his wife sent the $110 check. (Id. at 2).

In her deposition, plaintiff agreed that she did not make any payments on the account after submitting the check for $110. (Plaintiff's Deposition, Exh. E to Defendant's Brief, at 43). She insists this payment "was a full and final payment of an alleged balance which was in dispute." (Plaintiff's Response at ¶ 13). Plaintiff has also submitted documentation related to various requests she made to the defendant. She wrote defendant on September 30, 2005, confirming a telephone conversation of September 5, 2005. (Exh. D to Plaintiff's Brief in Opposition (Doc. 55)). Plaintiff had received the terms of the account, and refused to accept them. (Id.). She demanded a "payoff figure" and contended that she had never agreed to accept an interest rate of more than 30%. (Id.). Plaintiff requested arbitration if the

4

parties failed to resolve their dispute. (Id.). A second letter, dated September 10, 2006 and addressed to "Billing Errors" in the Lakes, Nevada, contains a "formal" request that the parties arbitrate their dispute over the account. (See Exh. C to Plaintiff's Brief in Oopposition). Plaintiff contends in that document that she had been promised that if she paid $1,425 the account would be closed and settled as paid in full. (Id.). Later, someone promised plaintiff that the account would be marked as paid in full if she paid $348. (Id.) "Every time I call we get a different story," plaintiff complained. (Id.). "I paid these amounts to protect my credit rating." (Id.).

Plaintiff filed a complaint on March 5, 2009 (Doc. 1). She filed an amended complaint on May 5, 2009. (Doc. 6). The amended complaint contains two counts. Count I alleges that defendant violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, by continuing to report plaintiff's debt to credit report agencies after she allegedly satisfied it. Count II contends that defendant engaged in an unlawful attempt to collect a debt by continuing to report plaintiff's account as delinquent to credit reporting agencies. Such actions allegedly violated the Pennsylvania Unfair Trade and Consumer Protection Act, 73 P.S. § 201, and the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.

Defendant filed an answer and counterclaim on October 19, 2009. (See Doc. 24). The counterclaim alleges that plaintiff's claim arises from a Sears MasterCard credit card issued in plaintiff's name. (Id. at Counterclaim ¶ 2). Plaintiff used the

5

account, agreeing to pay for amounts charged on the account and interest and finance charges. (Id. at ¶ 3). Defendant alleges that Eaton breached the card agreement by not paying the account pursuant to the card agreement's terms. (Id. at ¶ 4). Defendant contends that plaintiff owed $6,842.53 on the account as of September 30, 2009. (Id. at ¶ 6). Defendant's counterclaim seeks payment of this allegedly delinquent amount, plus costs, interest and attorney's fees. (Id. at ¶ 7). Plaintiff admits that the Sears MasterCard is the subject of this dispute. (Plaintiff's Answer to Counterclaim (Doc. 24) at ¶ 2). She contends, however, that defendant breached the credit-card contract by charging fees and raising interest rates in a manner not specified by the agreement. (Id. at ¶ 3-4). She thus denies the amount defendant claims she owes on the card. (Id. at ¶ 5).

Defendant filed a motion for judgment on the pleadings on November 6, 2009. (See Doc. 26). Defendant sought an order dismissing plaintiff's case against it, as well as judgment on Citibank's counterclaim and attorney's fees and costs. The court denied this motion on March 15, 2010. (See Doc. 39). The parties then engaged in discovery. At the close of discovery, defendant filed the instant motion. The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiff brings her claims pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681. As such, the court has jurisdiction pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the

6

Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article II of the United States Constitution.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477

7

U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant seeks summary judgment on both plaintiff's claims and Citibank's counterclaim. The defendant raises several grounds for granting this motion. The court will address each in turn.

**A. Plaintiff's Claims**

**1. Plaintiff's Claim that Her Account Was Settled by an "Accord and Satisfaction" Agreement**

Defendant first argues that plaintiff cannot prevail on any of her claims because Citibank did not, by cashing plaintiff's $110 check attached to an "accord and satisfaction" letter, settle the account. The card agreement expressly provides that Citibank can cash a check bearing a "paid in full" or other restrictive endorsement without losing any rights on the account. The $110 check, therefore,

did not pay the account off in full, despite plaintiff's "accord and satisfaction" letter. Plaintiff insists that sending this check was a legitimate attempt to satisfy the account and resolve an on-going dispute. Citing to the Uniform Commercial Code ("UCC") as adopted by Pennsylvania, she argues that under the law of Pennsylvania she has discharged the debt. The card agreement between the parties, plaintiff insists, is not material. Enforcing the agreement would be contrary to public policy, since the UCC contains the accord and satisfaction provision. See 13 Pa.C.S. § 3311. Even if the agreement applied under these circumstances, plaintiff contends that there is a genuine factual dispute over whether the agreement applies to the card she had. Summary judgment is therefore inappropriate on this claim.

The court agrees with the defendant. As explained above, the provisions of the cardholder agreement provide that Citibank can cash a check containing a restrictive endorsement without abandoning the bank's claim to the remaining account balance. Plaintiff does not dispute that these contract terms, if applied to the alleged "accord and satisfaction" agreement between the parties, would allow Citibank to collect on the remainder of the claim regardless of that agreement. Instead, she contends that the Pennsylvania UCC prevents enforcement of that provision of the contract. Two problems with this argument exist. First, as defendant points out, the parties contracted for the law of South Dakota to apply to their agreement. Plaintiff does not explain whether South Dakota law prevents the application of a cardholder agreement that avoids the "accord and satisfaction"

9

provisions of the UCC. She also does not dispute that South Dakota law would apply to the court's interpretation of this agreement. See 13 Pa.C.S. § 1301(a) (establishing that under the Pennsylvania UCC "when a transaction bears a reasonable relation to this Commonwealth and also to another state or nation, the parties may agree that the law either of this Commonwealth or of such other state or nation shall govern their rights and duties."). Second, even assuming that Pennsylvania law applies, no law in the Commonwealth supports plaintiff's argument that parties may not "contract around" the UCC. Indeed, the Pennsylvania UCC expressly provides that, except for "obligations of good faith, diligence, reasonableness and care prescribed by this title," "the effect of provisions of this title may be varied by agreement." 13 Pa.C.S. §§ 1302(b), 1302(a). Therefore, no evidence in this case establishes that plaintiff satisfied the account by sending a check for $110, along with a letter stating that endorsing and cashing that check represented an agreement to settle any claims.

Plaintiff also denies the authenticity of the credit card agreement that Citibank contends governs the account. Defendant has provided an affidavit from Elizabeth S. Barnette, an officer of Citicorp Credit Services. (See Declaration of Elizabeth S. Barnette, Exh. 1 to Defendant's Brief at ¶ 1). Barnette attests that the account in question was covered by the agreement here at question at the relevant times. (Id. at ¶ 2). Plaintiff does not counter this evidence, but instead merely argues that her denial provides sufficient evidence to create an issue of fact for trial. She argues

that "[n]either Plaintiff nor her husband recognize the purported contract." (Brief in Opposition at 4). She does not cite to any record evidence, either in her brief or in her statement of material facts, to support her assertion that the defendant has not provided the agreement that covers the account. She does not offer another contract that does apply. At her deposition, plaintiff testified that she could not "recall" if she had ever "reviewed" the account agreement. (Deposition of Brenda Eaton Shadie, Exh. A to Defendant's Reply Brief (Doc. 56) at 60). When presented with the credit card agreement here at issue, plaintiff could not "recall" if she had ever seen the document. (Id.). Plaintiff also represented that she had "no way of knowing" whether the agreement that Citibank had provided "govern[ed]" [her] account." (Id.). She also could not say whether she had "any other agreements" which were "the contract for the account," but did not "believe so." (Id.). Plaintiff therefore has presented no evidence other than her "'bare assertions, conclusory allegations or suspicisons'" to counter defendant's evidence. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (quoting Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)). "A party resisting a (Rule 56) motion cannot expect to rely" on such evidence and prevail. Id. The court therefore finds that no evidence exists by which a jury could find for the non-moving party on this dispute over the status of the account.

### 2. Plaintiff's Fair Credit Reporting Act Claim

Defendant seeks summary judgment on plaintiff's Fair Credit Reporting Act

11

Claim. That Act establishes a duty on furnishers of credit information to provide accurate reports, and to correct those reports if information proves inaccurate. 15 U.S.C. § 1681s-2. Defendant argues that plaintiff could not prevail on this claim because the conduct of which plaintiff complains–reporting that plaintiff had an unpaid debt to Citibank–was not improper. Defendant truthfully reported that plaintiff had not paid the amount due on the account. Plaintiff does not deny that the basis of this claim is her contention that her "accord and satisfaction" letter satisfied the account, and thus any report that she had an unpaid account was improper. The court has determined that no evidence supports plaintiff's claim that she repaid the account with her $110 check and letter. That check did not satisfy the account, and plaintiff was therefore in default. Any report to the credit agencies that the account was in default, therefore, would be accurate. Plaintiff could not prevail on this claim, and the court will grant the motion for summary judgment.

### 3. State Law Claims

Defendant likewise seeks summary judgment on plaintiff's state-law claims under the Pennsylvania Unfair Trade and Consumer Protection Act, 73 P.S. § 201, and the Fair Credit Extension Uniformity Act, 73 P.S. § 2270. The conduct of which plaintiff complains in her state law claims–providing a false "report that Plaintiff's account was in a delinquent status, and refusing to report that Plaintiff's account was settled in full"–is all premised on plaintiff's claim that her $110 payment and "accord and satisfaction" letter satisfied the account. As the court has already determined

12

that no evidence supports plaintiff's claim that this conduct settled the account, the court likewise concludes that no evidence supports plaintiff's state-law claims. The court will therefore grant defendant's motion on this matter as well.

### B. Defendant's Counterclaim

Citibank also seeks summary judgment on the bank's counterclaim. The counterclaim seeks the unpaid balance on plaintiff's account, $6,842.53, as well as interest and attorney's fees. Plaintiff does not deny that she incurred the charges on her account. Instead, she argues that there is a question of fact as to whether the card agreement provided by defendant is authentic, and whether defendant properly calculated the balance, interest, late fees and finance charges on the account. Plaintiff also contends, as explained above, that she satisfied the account with her purported "accord and satisfaction." As explained above, plaintiff has pointed to no evidence–only speculation–to support her claim that the agreement provided by defendant is not the agreement that covered the account. She has likewise cited to no evidence in the record to support her claim that defendant improperly calculated the amount owed on the account. Finally, as explained above, plaintiff's claim that she has satisfied the account is unavailing. Accordingly, summary judgment is appropriate for defendant on Citibank's counterclaim. No reasonable juror could find for the non-moving party based on this evidence. The court will order the defendant to pay the unpaid balance on the account.

**Conclusion**

13

For the reasons stated above, the court will grant the defendant's motion for summary judgment. The court will grant summary judgment to the defendant on plaintiff's claims and on Citibank's counterclaims. The plaintiff will be ordered to pay plaintiff the outstanding balance on her account to defendant. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA EATON, | : | No. 3:09cv414 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| CITIBANK (SOUTH DAKOTA), N.A., | : | |
|     Defendant | : | |

## ORDER

**AND NOW**, to wit, this 25th day of October 2010, the defendant's motion for summary judgment (Doc. 51) is hereby **GRANTED**. Judgement is hereby entered for the defendant on plaintiff's claims. Judgment is hereby entered for the defendant on defendant's counterclaim in the amount of $6,842.59. The Clerk of Court is directed to **CLOSE** the case.

                                              **BY THE COURT:**

                                              s/ James M. Munley
                                              **JUDGE JAMES M. MUNLEY**
                                              **UNITED STATES DISTRICT COURT**